UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARGARET R.,

Plaintiff,

v.

NANCY A. BERRYHILL,

Defendant.

Case No. 19-cv-01797-DMR

**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 22, 23

Plaintiff Margaret R. moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Plaintiff not disabled and therefore denied her application for benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. [Docket Nos. 22 ("Pltf. Mot."), 26 ("Reply").] The Commissioner cross-moves to affirm. [Docket No. 23 ("Def. Mot.").] For the reasons stated below, the court grants Plaintiff's motion and denies the Commissioner's motion.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for Social Security Disability Insurance ("SSDI") benefits on January 12, 2015, alleging a disability onset date of September 29, 2013. Administrative Record ("A.R.") 55, 180-85. The claim was initially denied on July 13, 2015 and again on reconsideration on October 19, 2015. A.R. 81-84, 86-90. On November 12, 2015, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). A.R. 91-92. After the August 2, 2017 hearing, ALJ Brenton L. Rogozen issued a decision finding Plaintiff not disabled. A.R. 18-34. The ALJ determined that Plaintiff has the following severe impairments: depression and anxiety. A.R. 23. The ALJ found that Plaintiff retains the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of simple, repetitive tasks." A.R. 25. The ALJ concluded that Plaintiff

is not disabled under the Medical Vocational Guidelines, section 204.00. A.R. 29-30.

The Appeals Council denied Plaintiff's request for review on January 28, 2019. A.R. 7-12. The ALJ's decision therefore became the Commissioner's final decision. *Taylor v. Comm'r of Soc. Sec. Admin*., 659 F.3d 1228, 1231 (9th Cir. 2011). Plaintiff then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows:

1. At the first step, the ALJ considers the claimant's work activity, if any. If the claimant is doing substantial gainful activity, the ALJ will find that the claimant is not disabled.

2. At the second step, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R.] § 416.909, or a combination of impairments that is severe and meets the duration requirement, the ALJ will find that the claimant is not disabled.

3. At the third step, the ALJ also considers the medical severity of the claimant's impairment(s). If the claimant has an impairment(s) that meets or equals one of the listings in 20 C.F.R., Pt. 404, Subpt. P, App. 1 [the "Listings"] and meets the duration requirement, the ALJ will find that the claimant is disabled.

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4. At the fourth step, the ALJ considers an assessment of the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. If the claimant can still do his or her past relevant work, the ALJ will find that the claimant is not disabled.

5. At the fifth and last step, the ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work. If the claimant can make an adjustment to other work, the ALJ will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.

20 C.F.R. § 416.920(a)(4); 20 C.F.R. §§ 404.1520; *Tackett*, 180 F.3d at 1098-99.

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a mere scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 882 (9th Cir. 2006) (citation and quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

The court has read and considered the entire administrative record. For the purposes of

brevity, the court cites only those facts that are relevant to its decision.

## IV. ISSUES PRESENTED

Plaintiff argues that the ALJ erred in (1) weighing the medical opinions, (2) rejecting her testimony, and (3) rejecting the lay testimony of her husband, Richard R. Plaintiff argues that, as a result of these errors, the ALJ erred in his ultimate disability decision.

## V. DISCUSSION

### A. Medical Opinions

#### 1. Legal Standard

Courts employ a hierarchy of deference to medical opinions based on the relation of the doctor to the patient. Namely, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("non-examining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Id*.

The Social Security Act tasks the ALJ with determining credibility of medical testimony and resolving conflicting evidence and ambiguities. *Reddick*, 157 F.3d at 722. A treating physician's opinion, while entitled to more weight, is not necessarily conclusive. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). To reject the opinion of an uncontradicted treating physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see, e.g.*, *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995) (affirming rejection of examining psychologist's functional assessment which conflicted with his own written report and test results); *see also* 20 C.F.R. § 416.927(d)(2); SSR 96-2p, 1996 WL 374188 (July 2, 1996). If another doctor contradicts a treating physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating physician's opinion. *Lester*, 81 F.3d at 830. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725

(citation omitted). "[B]road and vague" reasons do not suffice. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). This same standard applies to the rejection of an examining physician's opinion as well. *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984), though a non-examining physician's opinion may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). An opinion that is more consistent with the record as a whole generally carries more persuasiveness. *See* 20 C.F.R. § 416.927(c)(4).

**2. Analysis**

Plaintiff argues that the ALJ erred in reviewing the medical opinions of Dr. Debra Bunger and Dr. Aparna Dixit.

**a. Debra Bunger, M.D.**

In July 2014, Dr. Bunger began treating Plaintiff for anxiety, depression, and paranoia. A.R. 272-73, 318. She met with Plaintiff on a monthly basis, and the record contains her treatment notes from July 2014 to September 2015. Dr. Bunger provided a medical source statement dated October 13, 2015. A.R. 318-21. In the source statement, Dr. Bunger wrote that Plaintiff experiences depression, anhedonia, anxiety, panic attacks, and severe paranoia. A.R. 318. According to Dr. Bunger, Plaintiff is often unable to leave the house, can barely socialize even with family, and can barely go places on her own. A.R. 318. She diagnosed Plaintiff with paranoid schizophrenia and schizoaffective disorder. A.R. 318. Dr. Bunger opined that Plaintiff has marked limitations in her ability to work in coordination or proximity to others without being unduly distracted by them, complete a normal workday/workweek without interruptions from psychologically based

symptoms, and accept instructions and respond appropriately to criticism from supervisors; moderate limitations in her ability to interact appropriately with the general public and ask simple questions or request assistance; mild limitations in her ability to carry out short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine without special supervision, and make simple work-related decisions; and no limitations in her ability to get along with coworkers/peers without unduly distracting them or exhibiting behavioral extremes and ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. A.R. 319-20.

The ALJ assigned little weight to Dr. Bunger's opinion on the grounds that it is (1) internally inconsistent, (2) inconsistent with Dr. Bunger's own treatment notes, and (3) inconsistent with the claimant's activities of daily living. A.R. 28. Plaintiff argues that the ALJ erred by assigning too little weight to Dr. Bunger's opinion, and specifically, by discounting Dr. Bunger's assessment of moderate to marked impairments in Plaintiff's social functioning. Although Dr. Bunger assigned more restrictive limitations overall than the other medical sources in the record, her opinion as to Plaintiff's social limitations is not contradicted by any physician. Instead, every medical source assessed at least moderate limitations in Plaintiff's social functioning. A.R. 63, 77, 296. Thus, the ALJ was required to provide clear and convincing reasons to discount Dr. Bunger's opinion as to Plaintiff's social limitations. *Lester*, 81 F.3d at 830.

According to the ALJ, the limitations assessed by Dr. Bunger are internally inconsistent. A.R. 28. However, the ALJ's reasoning is not persuasive since he did not explain which limitations are inconsistent with each other. The Commissioner lists examples of the supposed contradictions, but this reasoning does not appear in the ALJ's opinion and so cannot be accepted. *See* Def. Mot. at 3; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (explaining that a court must review the agency's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Further, the limitations identified by the Commissioner are not necessarily contradictory. Plaintiff's ability to get along with coworkers and peers without distracting them is

not inconsistent with her inability to work near others without being distracted by them. *See* A.R. 319-20. Similarly, her ability to carry out either simple or detailed instructions in general does not imply that she can accept instructions and respond appropriately to criticism from supervisors. *See* A.R. 319-20. Because the ALJ did not explain or support his reasoning, the alleged inconsistencies in Dr. Bunger's assessment do not provide a clear and convincing reason to discount her opinion.

The ALJ also discounted Dr. Bunger's opinion on the basis that it contradicted her treatment notes, which show "only mildly abnormal mental status exams with some paranoia but otherwise, normal speech, alert and oriented, memory grossly intact, cognitive exam normal." A.R. 28. The ALJ is correct that Dr. Bunger's treatment notes record largely normal mental exams in terms of cognitive functioning, memory, speech, and orientation. *See, e.g.*, A.R. 272-73, 301, 302, 303, 304, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317. However, the ALJ does not explain how Plaintiff's relatively normal cognition and memory conflict with Dr. Bunger's assessment of moderate and marked limitations in social functioning. Dr. Bunger's notes consistently record Plaintiff's paranoia and anxiety, as well as her difficulty in trusting others, socializing, and leaving her house. *See, e.g.*, A.R. 310, 311, 312, 313, 316. As a whole, Dr. Bunger's notes and mental status exams are consistent with her opinion that Plaintiff has significant impairments in social functioning but is otherwise only mildly impaired. Thus, the ALJ erred in discounting Dr. Bunger's opinion on the basis that it is inconsistent with her treatment notes.

Finally, the ALJ wrote that Dr. Bunger's opinion "is not consistent with the claimant's own reports that she was able to attend a party with family and friends, she went to the mall by herself, and attended other family events along with her statement that she has no trouble with authority figures." A.R. 28. As noted by the ALJ, Plaintiff reported socializing or going to public places on several occasions. *See* A.R. 302, 303, 307, 310, 316, 405, 406, 431. However, on almost all of these occasions, Plaintiff was with family or friends. Even then, she usually experienced paranoia and anxiety or took medication to prevent it. A.R. 283, 302, 304, 310, 406, 421, 428. For example, during a trip to a golfing range with her husband, Plaintiff began experiencing paranoia, sat quietly by herself, and tried to distract herself by reading magazines. A.R. 406. On a trip to the mall with her mother, Plaintiff felt that men were looking at her in a threatening manner. A.R. 429. Plaintiff

reported on many occasions that she cannot go to church or the grocery store on her own, and that she had stopped going to the gym because of her paranoia. A.R. 204, 291, 305, 308, 309, 310, 311, 316, 383, 416, 423. The ALJ did not explain how Plaintiff's ability to occasionally socialize with family and friends undermines Dr. Bunger's opinion that Plaintiff would have moderate to marked impairment in interacting with coworkers and the public on a daily basis. Accordingly, Plaintiff's self-reported activities do not provide a clear and convincing reason to discount Dr. Bunger's opinion.

In sum, the ALJ erred in assigning little weight to Dr. Bunger's opinion.

**b. Aparna Dixit, PsyD**

On May 30, 2015, Dr. Dixit performed a consultative psychological evaluation. A.R. 293-97. She wrote that Plaintiff was cooperative and a reliable historian. A.R. 293-94. Plaintiff's speech was spontaneous, clear, and coherent, and there were no observed signs or symptoms of delusions or hallucinations. A.R. 294. Dr. Dixit observed that Plaintiff was appropriately dressed, alert and oriented, reserved, anxious, and somewhat irritable. A.R. 294. Dr. Dixit noted evident signs of paranoia and observed that Plaintiff was ill at ease throughout the exam. A.R. 294. She wrote that "[r]apport could be established with some difficulty." A.R. 293. Plaintiff's insight was limited but her judgment was intact. A.R. 294.

Dr. Dixit administered a battery of tests, including the Wechsler Adult Intelligence Scale ("WAIS-IV"), the Wechsler Memory Scale ("WMS-IV"), and the Trail Making Test ("TMT"). A.R. 295. Plaintiff's WAIS-IV results all fell within the low normal range. A.R. 295. Her scores on the WMS "suggest[ed] intact auditory and visual working memory functioning." A.R. 295. Her TMT scores "suggested mild to moderate impairment in organizing, sequencing, and mental flexibility." A.R. 295. Dr. Dixit assessed moderate impairments in Plaintiff's ability to withstand the stress of a routine work day, maintain emotional stability/predictability, interact appropriately with coworkers and supervisors on a regular basis, and interact appropriately with the public on a regular basis; mild to moderate impairments in her ability to follow/remember complex/detailed instructions, maintain adequate pace or persistence to perform complex tasks, and maintain adequate attention/concentration; mild limitations in her ability to perform tasks requiring mathematics skills;

and no limitations in her ability to follow/remember simple instructions, maintain adequate pace or persistence to perform one or two step simple repetitive tasks, adapt to changes in job routine, and communicate effectively with others (verbal and written). A.R. 296.

The ALJ assigned significant weight to Dr. Dixit's opinion except for her opinion that Plaintiff is moderately limited in interacting with coworkers, which he said is not consistent with the objective medical evidence and Plaintiff's activities of daily living. A.R. 28. Plaintiff argues that the ALJ erred in rejecting that portion of Dr. Dixit's opinion. Dr. Dixit's evaluation of Plaintiff's social impairments is not contradicted by any other physician, and accordingly, the ALJ was required to provide clear and convincing reasons to reject it. *Lester*, 81 F.3d at 830.

The court finds that the ALJ erred in discounting Dr. Dixit's opinion as to Plaintiff's social limitations. Although the ALJ wrote that her opinion is contradicted by "objective medical evidence," he did not explain what objective evidence undermines her opinion and did not cite any portion of the medical record in support of that statement. The ALJ's reasoning with respect to Plaintiff's activities of daily living is the same reasoning the court examined above with respect to Dr. Bunger's opinion and is deficient for the same reasons.

Therefore, the ALJ failed to provide clear and convincing reasons to reject Dr. Dixit's opinion.

**B. Remaining Arguments**

Plaintiff argues that the ALJ erred in making an adverse credibility determination, in discounting her husband's lay testimony, and in the step five assessment. The court does not reach these arguments in light of its conclusion that the ALJ erred in weighing the medical opinions. This error was not harmless because it could impact the ALJ's determination on other steps of the analysis. For example, if the ALJ assigns different weight to the medical opinions, he may find that Plaintiff's testimony and/or the lay testimony is more consistent with the medical evidence, or he assess more restrictive RFC.

On remand, the ALJ should revisit these issues and make findings consistent with this order and the regulations.

United States District Court
Northern District of California

**VI. CONCLUSION**

For the reasons stated above, Plaintiff's motion for summary judgment is granted and the Commissioner's cross motion is denied. The Clerk shall enter judgment for Plaintiff and against Defendant and close this case.

**IT IS SO ORDERED.**

Dated: November 24, 2020




Donna M. Ryu
United States Magistrate Judge